**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| JERRY SALAS,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>DR. MICHAEL KOEHN, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 3:16-CV-0635-RCJ-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 82] |

This case involves a civil rights action filed by Plaintiff Jerry Salas ("Salas") against Defendants Romeo Aranas ("Aranas"), Gloria Carpenter ("Carpenter"), Dawn Jones ("Jones"), and Michael Koehn ("Koehn") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 82.) Salas opposed the motion, (ECF No. 92), and Defendants replied, (ECF No. 96). For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 82), be granted.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Salas is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the High Desert State Prison ("HDSP") in Indian Springs, Nevada. However, the events that gave rise to this complaint occurred at the Ely State Prison ("ESP"). (ECF No. 30.) Salas submitted a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1-1.) On October 19, 2017, the Court screened Salas's complaint and determined that the deliberate indifference claim against Koehn could proceed, and Aranas was dismissed from the case, without prejudice. (ECF No. 10.)

///

---

[1]  This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Salas then submitted a First Amended Complaint ("FAC"), which reiterated the deliberate indifference claim against Koehn and added four new defendants and five new counts. (ECF No. 30.) In the FAC, Salas sued Koehn, Aranas, Jones, Carpenter, James G. Cox, and Warden Renee Baker. (*Id.*) Salas alleged an Eighth Amendment deliberate indifference claim, a First Amendment retaliation claim, a gross negligence claim, a negligence claim, an intentional infliction of emotional distress ("IIED") claim, and a supervisory liability claim. (*Id.*)

Although all pertinent facts in this case relate to Salas not receiving adequate medical treatment while housed at ESP, there are two separate situations involved. The first situation involves the actions of NDOC medical staff (Koehn) and those responsible for responding to grievances (Jones, Carpenter, and Aranas.) (*Id.* at 6-15.) The second situation involves NDOC officials (Aranas, Baker, and Cox) and their roles in implementing medical regulations at ESP. (*Id.*)

The facts relevant to the first situation are as follows: Salas alleges that he experienced symptoms such as abdominal pain and vomiting. (*Id.*) Salas claims that despite submitting multiple medical kites and grievances, NDOC staff at ESP first refused to let him see a doctor, then refused to provide adequate medical care once he did see a doctor. (*Id.*) Salas further alleges that when he disagreed with Koehn's diagnosis, Koehn retaliated by committing Salas to the infirmary, and wouldn't discharge him until he agreed to stop complaining about his symptoms. (*Id.*) Finally, Salas claims he was only able to receive adequate medical treatment once he was transferred to HDSP. (*Id.*)

The facts relevant to the second situation are as follows: Aranas and Cox created Administrative Regulation ("AR") 600, titled "Healthcare Services", on June 15, 2015. (*Id.* at 15.) AR 600 is only three pages long and does not require timely adequate delivery of healthcare services. (*Id.*) As the Warden, Baker was responsible for creating a Medical Delivery System ("MDS") that timely and adequately responds to inmates' medical needs. (*Id.*) Baker, however, failed to do so. (*Id.*) Salas alleges the deficient policies and regulations implemented by Aranas, Cox, and Baker were contributing, proximate causes

of the 8 to 9-month delay Salas experienced in receiving medical care. (*Id.* at 14.)

On March 28, 2019, this Court screened the FAC. (ECF No. 43.) In December 2019, the District Court affirmed, in part, and reversed, in part, the report and recommendation of the Magistrate Judge. (ECF No. 53.) Salas was allowed to proceed as follows: (1) Count I, an Eighth Amendment deliberate medical indifference claim against Koehn; (2) Count I, a deliberate medical indifference claim against Aranas, Carpenter, and Jones; (3) Count II, a First Amendment retaliation claim against Koehn; (4) Counts III and IV, state law claims of negligence and gross negligence against Jones, Carpenter, and Aranas; (5) Count V, a state law claim of IIED against Koehn; and (6) Count VI, a claim of vicarious liability against Jones, Carpenter, and Aranas. (*Id.*) All other counts and defendants were dismissed from this case, without leave to amend. (*Id.*)

On May 27, 2021, Defendants filed their motion for summary judgment. (ECF No. 82.) Defendants assert they are entitled to summary judgment because: (1) official capacity claims for money damages must be dismissed; (2) Salas failed to exhaust his administrative remedies for all but a portion of Count I before filing suit; (3) Defendants did not subject Salas to deliberate medical indifference; (4) Koehn did not retaliate against Salas; (5) Defendants are immune from Salas's state-law claims; (6) Defendants are entitled to summary judgment on the merits of each of the state law tort claims; and (7) alternatively, Defendants are entitled to qualified immunity. (*Id.*) Salas opposed the motion, (ECF No. 92), and Defendants replied, (ECF No. 96).

II. **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not

material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060,

1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex,* 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting

the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

**III.   DISCUSSION**

  **A.   Civil Rights Claims Under 42 U.S.C. § 1983**

  42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

  **B.   Official Capacity Claims for Damages**

  In their motion for summary judgment, Defendants first argue that to the extent Salas is attempting to seek damages from Defendants in their official capacities, those claims must be dismissed. (ECF No. 82 at 6.)

  A suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (internal quotations and citation omitted). "State officers in

their official capacities, like States themselves, are not amenable to suit for damages under § 1983." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997). Thus, in suing Defendants in their official capacities, Salas is essentially suing the State. *See Will*, 491 U.S. at 71. Therefore, the Court recommends that the official capacity claims be dismissed with prejudice, as amendment would be futile, based on Eleventh Amendment sovereign immunity. *See Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (holding that "[t]he Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature"); *see also* NRS 41.031(3) (stating that the State of Nevada does not waive its Eleventh Amendment immunity).

  **C.**  **Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

### 1. NDOC's Inmate Grievance System

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See* ECF Nos. 82-3, 82-4.) The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (ECF No. 82-3 at 6.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's grievance at this, and all subsequent levels." (*Id.* at 7.) NDOC staff is required to respond within forty-five days. (*Id.*) An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. (*Id.* at 8.)

///

At the first formal level, the inmate "shall provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect." (*Id.*) A First Level grievance should be reviewed, investigated and responded to by the Warden at the institution where the incident being grieved occurred; however, the Warden may utilize any staff in the development of a grievance response. (*Id.*) The time limit for a response to the inmate is forty-five days. (*Id.* at 9.) Within five days of receiving a dissatisfactory First Level response, the inmate may appeal to the Second Level, which is subject to still-higher review. (*Id.*) Officials are to respond to a Second Level grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id.*) Once an inmate receives a response to the Second Level grievance, they are considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

### 2. Exhaustion of Salas's Claims

Defendants argue that Salas failed to exhaust his administrative remedies for all of his claims except for a portion of Count I, which related to the issue of a lack of a doctor's appointment for his stomach pain. (ECF No. 82 at 9-13.) Specifically, Defendants assert Salas failed to exhaust issues related to (1) the issue of allegedly inadequate medical care after seeing a doctor, (2) the issue of retaliation, (3) the issues of negligence, gross negligence, or IIED raised in the state law claims, and (4) the issue of vicarious liability. (*Id.*) The only grievance that was fully exhausted was Grievance 2006-30-08007, which was filed on September 1, 2015. (*See* ECF No. 82-1.) In the informal grievance, Salas complained that, since February of that year, he had been requesting to see a doctor regarding stomach pain and issues and had only been seen by nursing staff, not by a doctor. (*Id.* at 17-20.) The only issues raised in the informal grievance were his stomach issues and his request to be seen by a doctor. (*Id.* at 19.) Salas submitted his first level grievance on November 2, 2015, and again addressed the issues of Salas's stomach pain and his request to be seen by a doctor. (*Id.* at 8-11.) Finally, Salas submitted a second level grievance on January 15, 2016. (*Id.* at 1.) In the second level grievance,

9

Salas complained about Dr. Koehn's demeanor, and disputed Koehn's methods, diagnosis, and treatment plan, and requested to be seen by another doctor. (*Id.* at 3-6.) The only issue then that Salas fully exhausted was the issue of him not seeing a doctor during the time between his first medical kite in February 2015 and the submission of the informal grievance in September 2015.

Salas does not dispute that he failed to exhaust his administrative remedies, but instead claims that he stopped filing grievances because "Dr. Koehn utilized the admittance to the infirmary as a cudgel to prevent [Salas] from continuing to seek medical care and from filing grievances." (ECF No. 92 at 29.) Further, Salas argues that he sincerely believed that if he submitted any further grievances against Dr. Koehn or "the 'ESP' medical delivery system" he would be subjected to further retaliatory action by Koehn. (*Id.* at 30.)

A review of the authenticated evidence shows that Salas did not file any grievances regarding any claims asserted in the Complaint except for those in Count I relating to a lack of a doctor's appointment for stomach pain. (*See* ECF Nos. 82-1, 82-2, 82-5.) AR 740 expressly requires that an inmate must file an informal grievance and proceed through each level of grievance thereafter in order to exhaust the administrative remedies process. (*See* ECF No. 82-3.) AR 740 requires an inmate to file an informal grievance within six months "if the issue involves . . . civil rights claims," and an inmate's failure to submit an informal grievance within this period "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." (*Id.* at 7.) Salas cannot circumvent the requirements of AR 740 by not completing the grievance process. Therefore, the Court finds that Salas failed to exhaust his administrative remedies pursuant to AR 740, prior to initiating this action, for all of his claims except the portion of Count I that related to the issue of a lack of a doctor's appointment for his stomach pain.

The burden now shifts to Salas "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino,* 747 F.3d at 1172 (citing

*Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). Salas argues that his administrative remedies were unavailable to him because of Koehn's retaliatory actions. (ECF No. 92 at 29-30.) However, Salas has failed to provide any evidence to support his conclusory assertion aside from his own affidavit, which is a conclusory, self-serving affidavit that lacks detailed facts and supporting evidence. (ECF No. 92 at 28-29.) Thus, the affidavit is insufficient to create a genuine issue of material fact. *See F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Further, Salas's own actions seem to contradict his assertion that he feared retaliation, as he continuously filed kites related to stomach issues in this case. (*See* ECF No. 84-1.) Finally, the evidence demonstrates that Koehn did not retaliate against Salas. Salas claims he was admitted to the infirmary as retaliation for filing grievances. (ECF No. 30 at 16.) However, Salas does not allege nor does he present evidence that Koehn even knew of any grievance that had been filed by Salas. Additionally, the evidence shows that Koehn admitted Salas to the infirmary for observation to determine the extent of his stomach issues and to isolate him from canteen food items, which were suspected to be contributing to Salas's health issues. (*See* ECF Nos. 84-2 at 9; 84-4.) Salas does not present any evidence to the contrary.

Having determined that Salas's argument related to fear of retaliation is without merit, the Court further determines that Salas has not presented any evidence to show that his administrative remedies were otherwise unavailable. Salas neither alleged, nor provided evidence of, anyone at NDOC failing to establish "locked boxes where all inmates have access to submit their grievances directly to the box." (*See* ECF No. 82-3 at 3.) Salas fails to show that any emergency grievance was filed, or that Salas even attempted to file or hand an emergency grievance to any NDOC staff member. (*See id.*) Salas also fails to allege or provide evidence that anyone at the NDOC failed to make grievance forms accessible through "unit staff, the unit caseworker or in the Institutional Law Library." (*Id.*) Salas has failed to assert or show that anyone at NDOC restricted his access to grievance forms. Furthermore, Salas fails to provide evidence that anyone at

NDOC failed or refused to either collect a grievance from him or failed to enter a grievance that was made into NOTIS. (*Id.* at 2-3.)

Exhaustion plays a very important role in both the prison and court settings. "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Woodford v.* Ngo, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992)). Exhaustion also "promotes efficiency." *Id.* Salas does not provide any evidence that he exhausted his administrative remedies, and he does not present any evidence that such remedies were effectively "unavailable." Accordingly, the Court concludes that Salas failed to exhaust available administrative remedies prior to filing this action, and the motion for summary judgment should be granted as to all claims, except for the portion of Count I that was exhausted, as discussed above.

### D. Eighth Amendment – Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide

1 treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

### 1. Analysis

As discussed above, the only claim that has been fully exhausted in this case is the portion of Count I related to the lack of a doctor's appointment for stomach pain from February until September 2015. First, the parties dispute whether Salas's stomach issues constitute a serious medical condition. (ECF Nos. 82 at 14, 92 at 20.) Even assuming Salas's stomach issues constitute a serious medical condition, there is an absence of evidence that Defendants knew that Salas faced a substantial risk of harm, and consciously disregarded it by failing to take reasonable steps to abate it. *See Farmer*, 511

U.S. at 837. Salas submitted his first medical kite related to his stomach issues on February 13, 2015, and he was seen by a registered nurse two days later. (ECF Nos. 84-1 at 109, 84-2 at 13.) Salas was prescribed Zantac to treat his acid indigestion. (ECF No. 84-2 at 12.) Salas filed two additional kites in March 2015 and was seen by a registered nurse within two or three days. (ECF Nos. 84-1 at 105, 108, 84-2 at 12.) Salas did not file any further kites and there is no record of any other complaints until September 1, 2015, when he filed Grievance 2006-30-08007.

Salas's main contention seems to relate to his disagreement as to the selected or prescribed course of treatment, namely being prescribed Zantac and being seen by a nurse instead of a doctor. Prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096. While Salas may have preferred to see a doctor as opposed to a registered nurse, he has not presented any evidence that this was medically unacceptable under the circumstances or was chosen in conscious disregard of an excessive risk to his health. The record shows Salas was receiving appropriate medical care as he was seen and treated for his stomach issues within two to three days of submitting kites and Salas does not present any evidence to the contrary. Based on the above, the Court finds that Defendants were not deliberately indifferent to Salas's medical needs and therefore Defendants' motion for summary judgment should be granted.

Because the Court finds that Defendants are entitled to summary judgment based on Salas's failure to exhaust and because the Court finds that Defendants were not

14

deliberately indifferent to Salas's medical needs, the Court need not address the other issues and arguments raised in the motion for summary judgment.

## IV.  CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 82), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 82), be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: November 8, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**